**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| ANTONIO RODRIGUEZ, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>)<br>UNITED STATES OF AMERICA. ) | 1:08-cv-982-TWP-DML |

**Entry Denying Motion for Relief Pursuant to**
**28 U.S.C. § 2255 and Denying Certificate of Appealability**

This matter is before the Court on the Petitioner's Motion to Vacate, Set Aside or Correct Sentence (Dkt. 1) and the Motion to Compel the Court to Respond (Dkt. 17). To begin, the Court apologizes for the dely in providing a ruling.

Petitioner Antonio Rodriguez ("Rodriguez") was found guilty on two counts of possessing methamphetamine with intent to distribute in cause number IP 04-CR-155-03-P/F. Because of the drug quantity and Rodriguez's prior conviction for a felony drug offense, on July 19, 2006 he received the statutory mandatory minimum sentence of 240 months' imprisonment. Rodriguez's direct appeal of his conviction was unsuccessful and he now seeks to vacate, set aside, or correct the sentence imposed in his criminal case pursuant to 28 U.S.C. § 2255.

Section 2255 allows a court to grant relief from a federal conviction or sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

For the reasons explained below, Rodriguez's request for relief pursuant to § 2255 and for an evidentiary hearing is **DENIED.** In addition, the court finds that a certificate of appealability should not issue.

## I. Procedural History and Relevant Facts

Rodriguez was found guilty on two counts of possessing methamphetamine with intent to distribute. See 21U.S.C. § 841(a)(1). He was represented by appointed counsel, William Dazey ("defense counsel"). Prior to trial, the United States filed an Information, pursuant to 21 U.S.C. § 851(a)(1) ("§ 851"), notifying Rodriguez that it intended to rely upon a prior felony drug conviction of Rodriguez's for sentencing purposes–specifically, a conviction in the California Superior Court, Orange County, Cause No. 85CF01738, Case No. C-58818, for the felony violation of "conspiracy to sell cocaine; sale/transportation narcotic drug; and possession of a narcotic drug for sale, on or about July 23, 2986" ("state felony conviction"). *See* Exhibit A (Dkt. No. 10-1) and Exhibit B (Dkt. No. 10-2). Based on the state felony conviction, and the quantity of methamphetamine involved in the federal crimes, Rodriguez received the statutory mandatory minimum sentence of 240 months imprisonment. 21 U.S.C. § 841(b)(1)(A)(viii).

In *United States v. Rodriguez*, the Seventh Circuit summarized the evidence presented at trial:

> At Rodriguez's two-day trial in July 2006, three police officers described how undercover officer Matt Hall, assisted by an informant, conducted two controlled buys of methamphetamine from Rodriguez in July 2003. The informant did not testify at trial, having apparently fled to Mexico.
>
> [Sergeant Steven] Swarm testified on direct that in July 2003 the informant gave him the names of several drug dealers in Indianapolis. When the prosecutor asked Swarm if he tried to verify the informant's information, Swarm replied, "I recognized some of the individuals he was discussing and

2

then, subsequently, I had photographs, and in fact showed the photographs, one being Mr. Antonio Rodriguez, and the informant identified him." Defense counsel interposed an objection, which the district court sustained. The challenged testimony was stricken, and the jury was ordered to disregard it.

On cross-examination, defense counsel had elicited that the government waited until the eve of trial to prepare transcripts in English of the audio recordings made during the two undercover buys, both of which were conducted in Spanish. The prosecutor, following up on that questioning during redirect, asked Sergeant Swarm why he did not have the transcripts made sooner. The prosecutor said later that she had expected Swarm to answer that transcripts are generally not prepared until the eve of trial as a matter of course. But Swarm answered: "There were several reasons. One, to be honest, I thought the defendant would plead guilty to the charge." Defense counsel objected, and the district court responded: "Sustained. Ladies and gentlemen, that is highly improper. . . . [Y]ou'll disregard it. Police are not entitled to draw those kinds of conclusions."

The district judge then declared a recess, and defense counsel moved for a mistrial while the jury was out. The judge denied the motion and stated: "In my view, it will not be a surprise to the jurors that police think that Mr. Rodriguez is guilty. And I think the cautionary instruction, the fervor of which may not be reflected in the transcript, ought to be sufficient in this case."

The trial continued. Officer Hall testified that at around 5:00 p.m. on July 9, 2003, he and the informant drove to a residence at 414 South Gray Street in Indianapolis. Although it is not clear from the record whether Rodriguez lived there, Sergeant Swarm testified that a van was registered to Rodriguez at that address, and he had seen Rodriguez leave the house on at least one occasion. When Hall arrived at the house on South Gray, the informant introduced him to a man whom Hall recognized as Rodriguez, having earlier seen his driver's license photograph. Hall, who speaks Spanish, testified that Rodriguez agreed to sell him two ounces of methamphetamine and said that it would take him two hours to procure the drugs.

Later that night the informant placed two telephone calls to Rodriguez to arrange the handoff, both of which were taped. At trial Hall identified Rodriguez's voice on the tapes. At around 8:00 p.m., Hall and the informant met Rodriguez in the parking lot of a grocery store a block away from the South Gray residence. Rodriguez showed up on foot, climbed into Hall's truck, and handed him a package in exchange for $800. Testing later revealed that the package contained 64 grams of a substance containing

methamphetamine. Hall asked if Rodriguez would sell him a pound of methamphetamine and whether he could contact Rodriguez directly, without going through the informant; Rodriguez agreed. After the exchange Hall drove to South Gray and dropped Rodriguez a quarter of a block from the house where they had met earlier.

Officer Hall testified that during the July 9 buy Rodriguez was sporting a goatee and wearing a gray baseball cap, a dark shirt, and jeans. Sergeant Swarm, who watched the transaction from a distance, testified that he also recognized Rodriguez from his driver's license photograph and described him as having facial hair and wearing a gray baseball cap and a dark shirt. At trial both officers identified Rodriguez as the seller. Both officers remarked that at trial Rodriguez was missing the goatee he formerly had. Hall noticed that he was wearing his hair slightly shorter and Swarm observed that he was "a little bit grayer."

On July 10, 2003, Officer Hall called Rodriguez to discuss his intended purchase of one pound of methamphetamine, but Rodriguez pretended to be someone else and said that Rodriguez was in California. After the informant called Rodriguez and reassured him that it was safe to deal with Hall, Hall was able to arrange a second buy with Rodriguez over the phone. At approximately 6:00 or 6:30 p.m. on July 18, 2003, Hall drove to the parking lot of a restaurant, again within a couple of blocks of 414 South Gray. Rodriguez again arrived on foot, climbed into Hall's truck, and placed a package under the passenger's seat. Hall gave Rodriguez $4,500. Testing later revealed that the package contained a little over a pound of a substance containing methamphetamine, with approximately 71 grams of pure methamphetamine. After completing the transaction—which took three to four minutes—Hall drove Rodriguez to a location a couple of blocks away from the restaurant. Sergeant Swarm and Sergeant James Wilkinson both participated in surveillance during the July 18 buy, and at trial both identified Rodriguez as the seller.

The defense did not present any evidence at trial. The final instructions to the jurors reminded them "not to pay attention to any testimony that was stricken, or any statements of counsel made to the court concerning those matters."

*United States v. Rodriguez*, 239 Fed.Appx. 294, 295-96 (7th Cir. 2007) (unpublished).

On appeal, represented by Michael J. Gonring ("appellate counsel" or "Attorney Gonring"), Rodriguez argued that the trial court "should have declared a mistrial after Sergeant Swarm described an out-of-court identification of Rodriguez by an informant and volunteered that prior to trial he had assumed that Rodriguez would plead guilty." *Rodriguez*, 239 Fed. Appx. at 295. The Seventh Circuit affirmed Rodriguez's conviction holding that "[i]n light of the extensive evidence of Rodriguez's guilt, these two statements— which were stricken and which the jury was instructed to ignore—did not deprive him of a fair trial." *Id.*

## II. Section 2255

The scope of relief available under 28 U.S.C. § 2255 is narrow. The parameters of available relief under this statute have been previously addressed by the Seventh Circuit:

> Section 2255 is not a way to advance arguments that could have been presented earlier–especially not when the arguments rest entirely on a statute. *See Reed v. Farley*, 512 U.S. 339 (1994). Although § 2255 ¶ 1 permits a collateral attack on the ground that 'the sentence was imposed in violation of the Constitution or laws of the United States,' only a small portion of statutory claims demonstrate that the sentence or conviction is itself a violation of law. The error must be so fundamental that a 'complete miscarriage of justice' has occurred. *Reed*, 512 U.S. at 348 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). Other 'non-constitutional errors which could have been raised on appeal but were not are barred on collateral review–regardless of cause and prejudice.' *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988).

*Young v. United States*, 124 F.3d 794, 796 (7th Cir. 1997) (internal citations altered). Thus, relief pursuant to § 2255 is limited to an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice. *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991).

Rodriguez's three grounds for relief are based on the theory that he was denied his Sixth Amendment right to the effective assistance of counsel.

1. Rodriguez claims that counsel failed to move for mistrial after Sergeant Steven Swarm described an out-of-court identification of Rodriguez by an informant and volunteered that prior to trial he had assumed that Rodriguez would plead guilty. Rodriguez claims that both trial and appellate counsel were ineffective by their failure to challenge Swarm's testimony on these grounds. Rodriguez briefly mentions that counsel should have also objected to the use of the tape recordings of his conversations (in Spanish) with the informant, Officer Hall and Rodriguez which were transcribed by police officer Jesus Soria ("Officer Soria").

2. Rodriguez claims that the sentencing court erred when it relied on the state felony conviction to apply the mandatory minimum 240 month sentence provision of 841(b)(1)(A)(viii). He claims he did not have counsel relative to the state felony conviction and that defense counsel was ineffective by his failure to investigate and argue this fact at sentencing.

3. Rodriguez claims that his right to a speedy trial under the Speedy Trial Act was violated by 254 days where the court allegedly failed to make the "ends of justice findings required under § 3161." Again, he claims that defense counsel was ineffective for not bringing this issue before the court.

Rodriguez seeks an evidentiary hearing relative to his challenges to the law enforcement testimony and defense counsel's failure to investigate his prior state felony conviction, but

6

makes no such request concerning his speedy trial claim.

### A. Ineffective Assistance of Counsel

Under the Sixth Amendment to the U.S. Constitution, the accused has a right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The right to the effective assistance of counsel is denied when the performance of counsel falls below an objective standard of reasonable professional conduct and thereby prejudices the defense. *Yarborough v. Gentry,* 540 U.S. 1, 5 (2003) (citing *Strickland v. Washington,* 466 U.S. 668, 688-94 (1984)). For a petitioner to establish that his "counsel's assistance was so defective as to require reversal" of a conviction or a sentence, he must make two showings: (1) deficient performance that (2) prejudiced his defense. *Strickland,* 466 U.S. at 687.

With respect to the first prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith,* 539 U.S. 510, 521 (2003) (quoting *Strickland,* 466 U.S. at 688). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. To that end, the defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). In addition, the performance of counsel under *Strickland* should be evaluated from counsel's perspective at that time, making every effort to "eliminate the distorting effects of hindsight." *Wiggins*, 539 U.S. at 523 (quoting *Strickland*, 466 U.S. at 688); *see also Kokoraleis v. Gilmore*, 131 F.3d 692, 696 (7th Cir. 1997).

With respect to the prejudice requirement, it must be shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694; *see also Benefiel v. Davis,* 357 F.3d 655, 661 (7th Cir. 2004). It is not enough for a petitioner to show that "the errors had some conceivable effect on the outcome of the proceeding." *Strickland,* 466 U.S. at 693. A petitioner must specifically explain how the outcome at trial would have been different absent counsel's ineffective assistance. *Berkey v. United States,* 318 F. 3d 768, 773 (7th Cir. 2003). A court "need not consider the first prong of the *Strickland* test if [it] find[s] that counsel's alleged deficiency did not prejudice the defendant." *Berkey*, 318 F.3d at 772 (citing *Matheney v. Anderson*, 253 F.3d 1025, 1042 (7th Cir. 2001)). "If it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

The standards for establishing ineffective assistance of counsel when handling appeals are identical to those established by Strickland. *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) (holding that only appellate counsel's failure to challenge "significant and obvious" issues will result in a finding of deficiency).

**1. Officer Testimony**

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the admissions of testimonial hearsay evidence in a criminal trial, where the defendant has no opportunity to cross-examine the witness, violates the confrontation clause, regardless of whether such statements are deemed reliable. *Crawford*, 541 U.S. 53-55. Rodriguez

argues that Officer Swarm and Officer Soria's testimony violated the confrontation clause and that his counsel was ineffective for failing to object to such testimony.

### a. Officer Swarm's Testimony

Rodriguez's objections to Officer Swarm's testimony were already considered in the direct appeal of this action. On appeal Rodriguez argued that the trial court "should have declared a mistrial after Sergeant Swarm described an out-of-court identification of Rodriguez by an informant and volunteered that prior to trial he had assumed that Rodriguez would plead guilty." *Rodriguez*, 239 Fed. Appx. at 295. In denying Rodriguez's appeal, the Seventh Circuit recognized that the testimony at issue was improper but found that the comments were not so prejudicial as to make a new trial the only permissible remedy. The Seventh Circuit affirmed Rodriguez's conviction holding that "[i]n light of the extensive evidence of Rodriguez's guilt, these two statements— which were stricken and which the jury was instructed to ignore—did not deprive him of a fair trial." *Id.*

The government argues that given the ruling on direct appeal, Rodriguez is barred from relitigating his challenge to Officer Swarm's testimony in his § 2255 motion. The government is correct. In *Fuller v. United States*, the Seventh Circuit explained that "the 'law of the case' doctrine dictates that 'once this court has decided the merits of a ground of appeal, that decision establishes the law of the case and is binding on a [court] asked to decide the same issue in a later phase of the same case, unless there is some good reason for reexamining it.'" 398 F.3d 644, 648 (7th Cir. 2005) (quoting *United States v. Mazak*, 789 F.2d 580,581 (7th Cir. 1986). *See also Varela v. United States*, 481 F.3d 932, 935-36 (7th Cir. 2007) ("Issues that were raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances.").

9

In Rodriguez's direct appeal, the Seventh Circuit held that while the testimony at issue was improper, "[i]n light of the extensive evidence of Rodriguez's guilt" and because the statement was stricken and the jury was instructed to ignore it, Rodriguez was not deprived of a fair trial. *Rodriguez*, 239 Fed. Appx. at 295. Rodriguez does not offer any changed circumstances warranting a reconsideration of the issue. For these reasons, this court is bound by the Seventh Circuit's decision that defense counsel and appellate counsel did not provide ineffective assistance.

### b. Officer Soria

Rodriguez argues that the admission of the translation of the wiretap conversations provided by Officer Soria into evidence constituted testimonial hearsay and that defense counsel was ineffective by failing to object to the admissibility of the transcript or to question Officer Soria regarding the accuracy of his translations. In addition, appellate counsel was ineffective for failing to raise this issue on direct appeal.

To ensure these benefits of cross-examination, the Sixth Amendment bars the admission of "testimonial hearsay" against a criminal defendant unless (1) the declarant is unavailable at trial; and (2) the defendant had a prior opportunity to cross-examine that declarant. *Crawford*, 541 U.S. at 68. Therefore, Rodriguez's right to confrontation was violated if Officer Soria's statement (1) was testimonial; and (2) was hearsay. *See id.* at 68. As to the first element, *Crawford* declined to "spell out a comprehensive definition of 'testimonial,'" id., but the term clearly pertains to statements made "in anticipation of or with an eye toward a criminal prosecution." *Jones v. Basinger*, 635 F.3d 1030, 1041 (7th Cir. 2011).

In this case, the government Exhibit 20T was admitted into evidence. Exhibit 20T is a translation of the audio tape of the phone calls leading up to the drug buy. See Trans., dkt 59 at pages 82-87. Officer Matt Hall testified that the transcript was of two calls made

10

by the confidential informant in his presence. The calls were recorded and transcribed by Jesus Soria a law enforcement officer and native Spanish speaker. Matt Hall testified that he also speaks Spanish and that the translation correctly labeled the speakers, and that he reviewed the transcript while listening to the tape recording and that the transcript truly and accurately reflects the conversation in English that occurred in Spanish. Hall also testified that he was able to identify the confidential informant and Rodriguez's voice on the tape. As the tape and transcript were admitted into evidence, the court issued a cautionary instruction to the jury, stating "You should carefully consider any evidence relevant to the accuracy or the reliability of the English transcript and, to the extent there's any conflict, the Spanish original has to be the guide to what was actually said in that conversation." Trans. p. 89.

Rodriguez did not object to the accuracy of Soria's transcript at trial nor does he object to its accuracy in his motion for relief pursuant to § 2255. Instead, Rodriguez first argues that his counsel was ineffective for failing to object to the admissibility of Officer Soria's translation of the two recordings. This argument is not persuasive, because defense counsel did indeed object to the admission of the transcripts. Defense counsel argued:

> "I'd repeat the objections I made to the previous transcript, Your Honor, but for the additional reason, of course, that the transcriber or translator who purports to have done this isn't in court and subject to cross-examination, either to his expertise or the accuracy of the translation."

Trans., dkt 59, p. 87. Defense counsel's performance cannot be found deficient for making an objection which was overruled by the court.

Rodriguez's second argument is also unpersuasive. Rodriguez argues that his counsel was ineffective in failing to call Officer Soria to question him about the accuracy

11

of the transcript. Rodriguez was not prejudiced by this decision. There is no evidence that questioning Soria regarding the accuracy of the transcript would have changed the outcome of the trial. The evidence against Rodriguez was overwhelming and there is nothing before this Court to dispute that the transcript was, in fact, accurate. Because no prejudice has been shown, Rodriguez cannot prevail on this claim of ineffective assistance of counsel.

Rodriguez's final argument is that appellate counsel should have raised this issue on appeal. This argument must also be rejected. Even if the failure to call Soria, the original transcriber, constituted error it was not plain. Rodriguez has not cited any case law supporting his position that his rights under the Confrontation Clause were violated by the fact that the transcriber who produced the transcript did not appear along with Officer Hall who confirmed the accuracy of the translation. Neither the Supreme Court nor the Seventh Circuit has addressed this issue. The Eleventh Circuit addressed a similar issue in *U.S. v. Sardinas*, 386 Fed. Appx. 927, 942-43, 1020 WL 2803393, at *14 (11th Cir. 2010) and held that even if the absence of testimony from the initial transcribers constituted error, that error was not plain.

In *U.S. V. Sutherland,* 656 F.2d 1181, 1201 (5th Cir. 1981), the Fifth Circuit held that the government failed to authenticate the transcripts because the government introduced no testimony that the transcripts were accurate reproductions of the taped conversations and no testimony as to the accuracy of the government's translation of certain Spanish portions of the conversations. The Fifth Circuit concluded, however, that the defendants were not prejudiced by the government's failure to verify the accuracy of their transcriptions because there was independent evidence of the content of the subject conversations. *Id.*

In this case, the government introduced evidence through Officer Hall to support the authenticity and accuracy of Soria's translation. In addition, there was independent

evidence of the content of the subject conversations, that being the drug buys that occurred between Rodriguez and Officer Hall. Under these circumstances, Rodriguez has not shown that he was prejudiced by appellate counsel's failure to raise the introduction of Soria's translation in his direct appeal and his claim of ineffective assistance on this basis must fail.

## 2. Prior Felony Conviction

Rodriguez's second specification of ineffective assistance of counsel is that his defense counsel was ineffective in failing to challenge the validity of the state felony conviction.

This claim is also without merit. Title 21, United States Code, Section 851(e) provides that "[n]o person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction." The courts have recognized one exception to the § 851(e) bar at sentencing. With the "sole exception of convictions obtained in violation of the right to counsel," a defendant may not collaterally attack in a federal criminal sentencing proceeding his prior state court convictions. *Custis v. United States*, 511 U.S. 485, 487 (1994); *U.S. v. Woolsey*, 535 F.3d 540, 550 (7th Cir. 2008) ("Sentencing is not the right time to collaterally attack a prior conviction unless the prior conviction was obtained in violation of the right to counsel.") (citing cases). "[A] prior conviction is presumptively void for sentencing purposes only where an unconstitutional deprivation of counsel is 'plainly detectable from a facial examination of the record.'" *United States v. Redding*, 104 F.3d 96, 99 (7th Cir. 1996) (*quoting United States v. Mitchell*, 18 F.3d 1355, 1361 (7th Cir.), *cert. denied*, 513 U.S. 1045 (1994)). Given the strong presumption of constitutional validity to state judicial proceedings, an ambiguous record is an insufficient basis for collaterally attacking a prior state conviction at sentencing. *Id.*

Attached to the government's response Exhibit B (Dkt. 10-2) is the state court record. The record shows that Rodriguez was represented when he made the decision to plead guilty to the drug conspiracy and that he entered his pleas of guilty knowingly and voluntarily. Rodriguez argues that ambiguity exists. Specifically, he asserts that Exhibit B does not indicate whether Rodriguez was in court with his attorney, Roger M. Carey, on July 23, 1986. Although the record contains a slight ambiguity, this omission is an insufficient basis for collaterally attacking his prior conviction when the record clearly reflects that Rodriguez was represented by counsel. The results of the sentencing would have been the same even if defense counsel would have further investigated the state felony conviction. Because Rodriguez can show no prejudice, defense counsel was not ineffective.

Rodriguez's claim of ineffective assistance of counsel on the ground that one of his prior felony drug offenses as described in the Information should have been contested is rejected because counsel is not ineffective for failing to raise a meritless claim.

### 3. Right to a Speedy Trial

Rodriguez's final specification of ineffective assistance of counsel is that his right to a speedy trial under the Speedy Trial Act was violated by 254 days where the court allegedly failed to make the "ends of justice findings required under § 3161." Again, he claims that defense counsel was ineffective for not raising this issue with the court.

The Speedy Trial Act ("STA"), 18 U.S.C. § 3161, provides that criminal defendants must be brought to trial within seventy days of the first federal court appearance of the last co-defendant to appear. 18 U.S.C. § 3161(h)(7). *See also Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986) (noting that in multi-defendant cases, the seventy-day clock does

14

not begin until the last co-defendant has been arraigned); *United States v. Farmer*, 543 F.3d 363, 368 (7th Cir. 2008) (when more than one defendant is charged in an indictment, the STA clock begins to run on the date of the last codefendant's initial appearance, which is usually arraignment).

The STA allows the exclusion of various periods of time from the seventy-day limit. In other words, the seventy days is not necessarily seventy straight days on the calender for reasons which will be discussed as relevant to Rodriguez's case. One proper basis of exclusion is any period of "delay resulting from any pre-trial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F). Any period resulting from a continuance can also be excluded from the STA count if the ends of justice served by the continuance outweigh the interest of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(8)(A). When defendants are joined for trial, the delay of one defendant may be ascribed to all co-defendants in the same case. 18 U.S.C. § 3161(h)(7). *See also United States v. Stephens*, 489 F.3d 647, 654 (5th Cir. 2007); *United States v. Owokoniran*, 840 F.2d 373, 375 (7th Cir. 1987).

There was no violation of the STA. Rodriguez was indicted on September 22, 2004, along with four other co-defendants, and this criminal action proceeding to trial consistent with the following time line:

- Rodriguez made his initial appearance on August 22, 2005.

- Trial was set for October 17, 2005.

- On October 11, 2005, defense counsel filed his first motion to continue the trial. The trial court granted the motion finding that the "ends of justice served by the continuance outweigh[ed] the best interests of the public and the Defendant to a speedy trial." The trial was continued to January 3, 2006, and the time lapse between October 17, 2005, and January 3, 2006, was

15

- excluded under the STA.

- On November 16, 2005, co-defendant Rogelio Avila made his initial appearance. See Criminal Docket 1:04-cr-155-04 at 6.

- On December 15, 2005, defense counsel moved for the second time to continue the trial stating that "the ends of justice" served by the continuance outweighed the best interests of the defendant to a speedy trial. Criminal Docket at 15. The trial court granted the motion, stated its reasons for finding the ends of justice were served, and excluded the time lapse between January 3, 2006, and February 21, 2006.

- On February 9, 2006, co-defendant Avila moved to continue the trial. The court granted the motion on that same day and set a new trial date of April 10, 2006, finding that the defendant's interest in adequate trial preparation and continuity of counsel outweighed the defendant's and the public's interest in a speedier trial, and excluded the time lapse between February 21, 2006 and April 10, 2006.

- On March 20, 2006, defense counsel moved for a third time to continue the trial which the trial court granted finding "the ends of justice served." The trial was continued to May 8, 2006, and the time that lapses between the April 10, 2006, trial date and May 8, 2006, was found excludable under 18 U.S.C. § 3161.

- On April 28, 2006, co-defendant Avila moved to continue the trial which the trial court granted and set a new trial date of June 19, 2006. The court found that the "ends of justice" was served by granting the continuance and that the period of delay resulting from the continuance should be excluded from the STA calculation.

- On May 31, 2006, defense counsel filed his fourth and final motion to continue the trial. The trial court granted the motion the next day and set a new trial date of July 17, 2008, finding "the ends of justice served" and that the time that lapses between the June 21, 2006, trial date and July 17, 2009, was excludable under 18 U.S.C. § 3161.

- On June 20, 2006, the government moved to sever Rodriguez from the co-defendants' trial and the trial court granted the motion on July 5, 2006.

Until July 5, 2006 (the date Rodriguez was severed for trial), Rodriguez and Avila were co-defendants. See *United States v. Tanner*, 941 F.2d 574, 579-581(7th Cir. 1991). As such, the speedy trial clock did not begin until co-defendant Avila made his initial appearance on November 16, 2005. In addition, the continuances granted at the request

16

of both Rodriguez and co-defendant Avila properly excluded the time lapses from the STA calculation. *Tanner*, 941 F.2d at 580(the excludable delay of one defendant may be ascribed to all co-defendants in the same case, absent severance). Contrary to Rodriguez's argument, in granting each of the continuances the trial court found the ends of justice served. All told, 243 days were properly excluded from the speedy trial calculation. For purposes of the speedy trial rule, 1 day elapsed between when the speedy trial clock commenced and when Rodriguez's trial began on July 17, 2006, so the STA would have provided Rodriguez no relief.

Rodriguez's counsel did not err by failing to challenge Rodriguez's conviction on the basis of a violation of the STA.

### III. Conclusion

For the reasons explained above, Rodriguez is not entitled to relief on his § 2255 motion. The trial and appellate record, when considered in light of all the applicable principles of law, establish conclusively that Rodriguez is not entitled to the relief he seeks in his post-conviction petition. There was no ineffective assistance of counsel and there is no need for an evidentiary hearing. Accordingly, his motion for relief pursuant to § 2255 is **DENIED**, and this action is dismissed with prejudice. Judgment consistent with this Entry shall now issue.

### IV. Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Rodriguez has failed to show that reasonable jurists would find this court's "assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The court therefore also **DENIES** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 07/20/2011

*[signature: Tanya Walton Pratt]*
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Gerald A. Coraz
UNITED STATES ATTORNEY'S OFFICE
gerald.coraz@usdoj.gov

Antonio Rodriguez
07964-028
Ashland FCI
Inmate Mail/Parcels
P.O. Box 6001
Ashland, KY 41105